REMUS ELLIOTT v. THE STATE.

No. 19513.   Delivered April 20, 1938.
Rehearing denied June 15, 1938.

The opinion states the case.

*T. L. Tyson,* of Corsicana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder without malice; the punishment, confinement in the penitentiary for four years.

The homicide occurred in the jail of Robertson County. Deceased, Joe Smith, who was a negro, was being held in jail on a charge of insanity. After his condition had improved the

sheriff made him a trusty. On the 19th of March, 1937, appellant and Linnis Elliott were arrested on a charge of drunkenness and incarcerated in jail. Deceased was lying on a bunk in the runaround when, according to the testimony of the State, appellant and Linnis Elliott attacked him. They kicked him, stomped him and beat his head against the concrete floor. Also one of them stated in effect that he would kill deceased if he had his knife with him. When discovered by the sheriff deceased was unconscious. The sheriff testified, in part, as follows: "On the bars, right down next to the floor immediately under this bunk there was blood and hair, and there was blood on a blanket a little further in the cell next to the back compartment, covering a space a foot and a half or two feet square. There was blood out in what is called the runaround * * *. Yes, I observed lots of blood out there on the floor. I had at that time occasion to examine and observe the defendant, Remus Elliott. There was spots of blood on his pants about the knee somewhere and blood on the toe of his shoe. * * * I observed blood on one of his shoes that I remember."

Deceased was carried to a hospital where he remained for about four weeks. He was unconscious from the date he was injured until the date of his death. About two days prior to his death he was removed from the hospital to jail.

A witness for appellant testified that deceased had had fits prior to the time he had been incarcerated in jail. Dr. A. C. Bennett, the attending physician, testified that the external injuries deceased had received caused his death. Upon cross-examination the doctor's attention was called to the testimony of appellant's witness to the effect that deceased had on occasions had fits. The doctor repeatedly stated that in his opinion the death of deceased was caused by a brain injury occasioned by external force. However, he did say that there was a slight possibility that he could have died from a pre-existing disease. In the state of the record appellant sought to have the court instruct the jury, in substance, to acquit him of murder if they believed death was the result of a pre-existing disease. We think the testimony failed to raise the issue. The statement of the doctor on cross-examination that it was slightly possible that a pre-existing disease could have caused the death is, in our opinion, entirely too speculative to have called for the charge appellant sought. We think the entire record conclusively shows that deceased's death resulted from the injuries he sustained at the hands of appellant and his companion.

It has been observed that deceased was removed from the hospital two days prior to his death. He was unconscious at the

time. Appellant sought a charge on gross negligence or improper treatment. If we understand the testimony of the attending physician, the removal of deceased to the jail could not have caused his death. It was the doctor's version that, under no circumstances, could deceased have lived. We think that under the testimony the trial court was warranted in declining to instruct the jury as requested.

Appellant introduced testimony to the effect that the general reputation of deceased as a quiet, peaceable and inoffensive negro was bad. However, he went further and proved that where white people were concerned the deceased was impudent. We quote from the testimony of one of appellant's witnesses as follows: "He was as an abusive negro as I ever saw." Thereafter the State, over appellant's objection, proved by the sheriff that from his observation the deceased was an humble negro. Under the circumstances, we would not feel warranted in ordering a reversal because of the matter reflected by the bill of exception under consideration. The entire testimony shows that at the time the deceased was attacked he was lying on a bunk. Appellant and his companion assaulted him without provocation and beat him into unconsciousness. The evidence shows no impudence on the part of deceased toward either of his assailants. If proof that deceased was an humble negro was improperly received— and this is not conceded in view of the attack made upon the deceased by the testimony of the witness that he was abusive— we would not feel warranted, under the circumstances reflected by the record, in holding that the bill of exception reflects reversible error.

We deem the evidence sufficient to support the conviction.

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews his complaint that errors were committed in respect to the matters discussed in our original opinion, and that we reached a wrong conclusion regarding them. It would serve no useful purpose to discuss

those matters further. It is thought a correct conclusion was reached originally.

In appellant's amended motion for new trial misconduct of the jury was alleged, it being claimed (a), that they discussed the failure of appellant to testify and, (b), that they discussed among themselves their personal knowledge of appellant's reputation. In our opinion neither of such claims are supported by the evidence of the jurors received upon the hearing of the motion for new trial. We discuss only the second claim. Evidence was elicited by the State to the effect that appellant's reputation in regard to fighting and being overbearing was bad. Appellant put his reputation in issue. The facts which might have been hurtful to him in that regard came from his own witnesses on cross-examination by the State. The only incident upon which appellant could possibly rely to support a claim that any juror discussed his personal knowledge of appellant's reputation arises from a conversation in the juryroom between jurors Grace and Meier. Mr. Meier did not know anything about appellant personally, and his conclusion that appellant had a bad reputation was based solely on what he had heard from the witness stand. In the course of a discussion as to the penalty he said to Mr. Grace, "You know his reputation as well as I do, or probably better, you live close to him, and he has been pretty much of a fighter or scrapper all of his life." Mr. Grace never at any time said whether he did or did not know personally anything about appellant's reputation. If he did have any personal information about it he maintained a discreet silence regarding it. The other jurors disclaimed hearing anything in the room regarding the incident.

We are not impressed with the view that the circumstances stated support appellant's contention.

The motion for rehearing is overruled.